DURAND–McNEIL–HORNER COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket Nos. 43285, 55788.   Promulgated May 18, 1934.

*Harry Thom, Esq.*, and *Freeman Day, Esq.*, for the petitioner.
*J. R. Johnston, Esq.*, for the respondent.

OPINION.

SMITH: These proceedings, consolidated for hearing, involve income tax deficiencies as follows:

| Docket No. | Year | Deficiency |
|---|---|---|
| 43285 | 1924 | $5,171.49 |
| Do | 1925 | 3,287.97 |
| 55788 | 1928 | 8,328.98 |

The questions presented by the petitions relate principally to the basis to be used in the computation of gain or loss and in the computation of depreciation allowances on assets acquired from the consolidating corporations. They also allege that the deficiencies are barred by the statute of limitations.

At the hearing of these proceedings a stipulation of facts covering all issues at that time urged upon us by the petitioner was filed. No data are contained in such stipulation relative to the question of the bar of the statute of limitations. The Board therefore assumes that the petitioner has waived that allegation of error.

On or prior to July 1, 1924, the Durand & Kasper Co., McNeil & Higgins Co., and Henry Horner & Co., were all incorporated and doing business under the laws of the State of Illinois. These three companies desired to consolidate. In pursuance of that purpose they entered into a formal agreement on July 1, 1921, whereby they consolidated under the name of the Wholesale Grocers Corportion, which was thereafter changed to Durand–McNeil–Horner Co. Under the consolidation the new company, the petitioner herein, acquired all of the assets of the three consolidating companies and assumed the payment of all the debts and liabilities of the consolidating companies. The consolidation was consum-

mated by a certificate of consolidation filed with the Secretary of State for the State of Illinois on September 9, 1921.

Under the agreement above referred to and the confirmatory resolutions of the directors and stockholders of the three consolidating companies the stockholders of those companies were entitled to receive preferred stock of the consolidated company to an amount of par value equal to the " net value " of the assets of the respective consolidating companies and in addition an equal number of the shares of common stock of the consolidated company of no par value.

Subsequently, on or about January 24, 1922, the July 1, 1921, agreement was modified, under which modification the net value of the assets of the three consolidating companies as of July 1, 1921, was found and determined to be as follows:

McNeil & Higgins Co_____ $903, 800
Durand & Kasper Co_____ 844, 200
Henry Horner & Co_____ 391, 000

In connection with the consolidation the stockholders of the constituent companies received shares of capital stock of the petitioner out of a total issued stock in connection with the consolidation of 42,780 shares as follows:

| Stockholders of— | Shares of petitioner received | Percentage of total shares |
|---|---|---|
| McNeil & Higgins Co_____ | 18, 076 | 42. 25 |
| Durand & Kasper Co_____ | 16, 884 | 39. 47 |
| Henry Horner & Co_____ | 7, 820 | 18. 28 |
| Total_____ | 42, 780 | 100 |

The parties have stipulated:

The Commissioner has determined that the consolidated company, Durand-McNeil-Horner Co., the petitioner herein, in computing depreciation, leasehold amortization and gain or loss in the sale of its assets for the years 1924, 1925, and 1928, must use the same basis as the transferor companies would have used, whereas the petitioner contends that it should be allowed to use the value of said assets when acquired by the Durand-McNeil-Horner Co. from the constituent companies.

It is stipulated that if the Board should sustain the Commissioner's determination the deficiencies set forth in the notices of deficiency are correct, but if the Board should sustain the Petitioner's contention then there are no deficiencies and no overassessments with respect to the Petitioner's liability in these proceedings for the taxable years 1924, 1925 and 1928.

The only question before the Board for determination is the basis to be used by the petitioner for the taxable years involved in the determination of depreciation allowances upon the assets acquired from the consolidating corporations and in the determination of profit realized from the sale or other disposition of some

of those assets. The respondent contends that the petitioner must use the same basis as would have been used by the consolidating companies had there been no consolidation. Pertinent provisions of the taxing statutes are:

Revenue Act of 1921:

SEC. 202. (a) That the basis for ascertaining the gain derived or loss sustained from a sale or other disposition of property, real, personal, or mixed, acquired after February 28, 1913, shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(c) For the purposes of this title, on an exchange of property, real, personal or mixed, for any other such property, no gain or loss shall be recognized unless the property received in exchange has a readily realizable market value; but even if the property received in exchange has a readily realizable market value, no gain or loss shall be recognized—

\* \* \* \* \* \* \*

(2) When in the reorganization of one or more corporations a person receives in place of any stock or securities owned by him, stock or securities in a corporation a party to or resulting from such reorganization. The word "reorganization," as used in this paragraph, includes a merger or consolidation (including the acquisition by one corporation of at least a majority of the voting stock and at least a majority of the total number of shares of all other classes of stock of another corporation, or of substantially all the properties of another corporation), recapitalization, or mere change in identity, form, or place of organization of a corporation, (however effected); \* \* \*

Revenue Act of 1924:

SEC. 204. (a) The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\* \* \* \* \* \* \*

(7) If the property (other than stock or securities in a corporation a party to the reorganization) was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made.

\* \* \* \* \* \* \*

(c) The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivision (a) or (b) for the purpose of determining the gain or loss upon the sale or other disposition of such property \* \* \*.

The Revenue Act of 1926 (sections corresponding with the above) is the same in all essential respects with reference to the questions herein involved.

Revenue Act of 1928:

SEC. 113. BASIS FOR DETERMINING GAIN OR LOSS.

(a) *Property acquired after February 28, 1913.*—The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that—

\*     \*     \*     \*     \*     \*     \*

(7) TRANSFERS TO CORPORATION WHERE CONTROL OF PROPERTY REMAINS IN SAME PERSONS.—If the property was acquired after December 31, 1917, by a corporation in connection with a reorganization, and immediately after the transfer an interest or control in such property of 80 per centum or more remained in the same persons or any of them, then the basis shall be the same as it would be in the hands of the transferor, increased in the amount of gain or decreased in the amount of loss recognized to the transferor upon such transfer under the law applicable to the year in which the transfer was made. This paragraph shall not apply if the property acquired consists of stock or securities in a corporation a party to the reorganization, unless acquired by the issuance of stock or securities of the transferee as the consideration in whole or in part for the transfer.

\*     \*     \*     \*     \*     \*     \*

SEC. 114. BASIS FOR DEPRECIATION AND DEPLETION.

(a) *Basis for depreciation.*—The basis upon which exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in section 113 for the purpose of determining the gain or loss upon the sale or other disposition of such property.

Although not denying that all of the petitioner's capital stock was issued to the stockholders of the constituent companies for the net assets of those companies, the petitioner, nevertheless, contends that it is not limited to the same basis that would have been applicable had there been no consolidation. Its argument upon this point is that immediately after the transfer of the properties by the several corporations to the petitioner " an interest or control in such property of 80 per centum or more " did not remain in the same persons; that the percentage of interest or control of the various groups of persons associated with the assets immediately before the transfer should be considered *independently* in determining whether an 80 percent interest or control remains in the same persons or any of them immediately after the transfer; that the Board has recognized that section 331 of the Revenue Acts of 1918 and 1921 is very much the same as section 204 (a) (7) of the Revenue Acts of 1924 and 1926 and section 113 (a) (7) of the Revenue Act of 1928, except as to the percentage of ownership of stock required to determine the question of control, citing *Watab Paper Co.*, 27 B.T.A. 488, in support thereof. The petitioner also relies upon *R. H. Perry & Co.*, 12 B.T.A. 328; and *Independent Aetna Sprinkler Co.*, 15 B.T.A. 521. The last two cited cases deal with the computation of invested capi-

tal. We are of the opinion that they are not apposite in the proceedings at bar.

It can not be doubted that it was the intent of Congress that where there is a reorganization of corporations under the Revenue Acts of 1926 and 1928, and the constituent companies and their stockholders are relieved from the payment of income tax upon the profits realized from such reorganization, the new corporation which takes over those assets is not entitled to use a basis for the computation of depreciation allowances and for the computation of gain or loss upon the sale of the assets thus acquired in excess of the basis that would have been available to the former owner or owners of the assets. Otherwise actual gains would escape income tax.

We are of the opinion that the contention of the petitioner for a stepped-up basis for the computation of depreciation allowances and for the computation of gain upon the sale of the assets acquired from the consolidating companies is not sound. All of the assets with which we are here concerned were paid in to the petitioner corporation in exchange for all of its shares of stock. The stockholders of the consolidating corporations collectively owned 100 percent of the stock of the corporations which owned the assets in question. The same stockholders had a 100 percent ownership in the stock of the petitioner corporation. Upon these facts we think that an interest or control in the property transferred " of 80 per centum or more " remained in the same persons after the consolidation as before.

In *Monarch Electric & Wire Co.* v. *Commissioner*, 38 Fed. (2d) 417; affirming 12 B.T.A. 158, it was held that assets transferred on reorganization could not be allowed an increased value in determining invested capital where stock was owned by the same stockholders, though control within the group shifted. With equal force it must be said that the assets transferred on reorganization can not be allowed an increased value for the purpose of determining depreciation deductions and gains on the sale where the stockholders of the constituent companies receive all of the shares of stock of the new corporation in proportion to their ownership of the net assets paid in to the new corporation. The Board has held in numerous cases that where property is acquired by a corporation for its stock in nontaxable transactions the basis for computing depreciation thereon is cost to the transferor. *Grain King Mfg. Co.*, 14 B.T.A. 793; *D. O. James Mfg. Co.*, 17 B.T.A. 205; *Burlington Gazette Co.*, 21 B.T.A. 156; *Olean Sand & Gravel Corp.*, 24 B.T.A. 324. The contentions of the petitioner are not sustained.

Reviewed by the Board.

*Judgment will be entered for the respondent.*