J. HENRI BROWN, Petitioner, *v.* TAX COURT OF PUERTO RICO, Respondent; TREASURER OF PUERTO RICO, Intervener.

No. 275.   Argued November 12, 1952.—Decided January 13, 1953.

---

*Brown, Newsom & Córdova* for petitioner. *Víctor Gutiérrez Franqui, Attorney General, José A. Malpica, Assistant Attorney General,* for intervener, respondent in the main action.

MR. JUSTICE ORTIZ delivered the opinion of the Court.

The Treasurer notified petitioner J. Henri Brown several deficiencies in connection with his income tax returns for the years 1942, 1943 and 1944. Almost all the deficiencies thus notified resulted from the disallowance of deductions made by petitioner in his tax returns for expenses and disbursements in connection with a citrous fruit farm which he owns, in addition to the depreciation of a grapefruit orchard, the majordomo's house, machinery and utensils used in that farm.

The Treasurer's action was based in his determination to the effect that the operation by petitioner of the aforesaid farm was not a necessary and ordinary expense of the taxpayer's business and was not performed for profit or lucrative purposes but rather for the personal satisfaction or entertainment of the taxpayer, who for many years has been in the active practice of his profession as attorney.

The Tax Court, after considering the pleadings and the evidence concluded that the Treasurer's determination as to the character of the operation of the aforesaid farm was incorrect, and decided that it was the operation of "an industry or business of this taxpayer." Consequently, it ordered that plaintiff be allowed the items claimed, with exception of the ones corresponding to the alleged depreciation. Petitioner has appealed to this Court, from the decision based on this last determination.

■■ Insofar as pertinent, the decision of the Tax Court states the following:

"As to the depreciation, although it is true that plaintiff is entitled to claim it on the equipments, machineries, and appurtenances of the farm under the provisions of § 16(a)(8) of the Act and could claim it on the grapefruit plantation and on other plantations of a long season production inasmuch as § 110 of the Regulation considers as a capital investment expenses incurred for working plantations of this nature, his evidence was insufficient to sustain the amounts claimed. Inasmuch as defendant refused not only the right to deductions but also the amounts thereof, it was incumbent on plaintiff to prove to us in a clear and convincing way the amount of the depreciation claimed."

Generally speaking, it is incumbent on the taxpayer to show that the determination of the Treasurer of Puerto Rico is erroneous. *Corporación Azucarera* v. *Tax Court*, 69 P.R.R. 189. However, an exception to that rule has been established to the effect that if the deficiencies pointed out by the Treasurer are based on arbitrary, excessive or irrational determinations, it is enough, as a general rule that this be satisfactorily shown to the Tax Court, and the taxpayer need not show the exact amount of the tax that might lawfully be assessed against him. In the case of *Helvering* v. *Taylor*, 293 U. S. 507, 515, the following is set forth:

"Unquestionably the burden of proof is on the taxpayer to show that the commissioner's determination is invalid. . . . Frequently, if not quite generally, evidence adequate to over-

throw the commissioner's finding is also sufficient to show the correct amount, if any, that is due. . . . But, where as in this case the taxpayer's evidence shows the commissioner's determination to be arbitrary and excessive, it may not reasonably be held that he is bound to pay a tax that confessedly he does not owe, unless his evidence was sufficient also to establish the correct amount that lawfully might be charged against him. On the facts shown by the taxpayer in this case, the board should have held the apportionment arbitrary and the commissioner's determination invalid. Then, upon appropriate application that further hearing be had, it should have heard evidence to show whether a fair apportionment might be made and, if so, the correct amount of the tax. The rule for which the commissioner here contends is not consonant with the great remedial purposes of the legislation creating the Board of Tax Appeals. The Circuit Court of Appeals rightly reversed and remanded the case for further proceedings in accordance with its opinion."

To that same effect see 9 Mertens, *Law of Federal Income Taxation*, § 50.65, p. 290; *Clements* v. *Commissioner of Internal Revenue*, 88 F. 2d 791, 793; *Wilson Coal Land Co.* v. *Commissioner of Internal Rev.*, 87 F. 2d 185, 189; *Booth Fisheries Co.* v. *Commissioner of Internal Revenue*, 84 F. 2d 49, 51; *Industrial Trust Co.* v. *Commissioner of Internal Rev.*, 165 F. 2d 142, 148. It is enough to show, on appeal, that the method employed by the Treasurer is arbitrary, in order that the case be remanded to the lower court. *Laird* v. *Commissioner of Internal Revenue*, 85 F. 2d 598, 601; *Wodehouse* v. *Commissioner of Internal Revenue*, 177 F. 2d 881, 883; *Strauss* v. *Commissioner of Internal Revenue*, 168 F. 2d 441. Generally speaking, when the Treasurer's determination is arbitrary or excessive, the insufficiency of the taxpayer's proof as to the correct tax, does not warrant for the sustaining of the arbitrariness and an opportunity to establish the facts necessary to a lawful determination should be granted. *Stock Yards Nat. Bank* v. *Commissioner of Internal Revenue*, 153 F. 2d 708, 712; *B. F. Sturtevant Co.* v. *Commissioner of Internal Revenue*, 75 F. 2d 316, 323.

■ In the case at bar the deficiencies in question were found by the Treasurer exclusively on the ground of his determination that the operation of petitioner's farm was not carried on for profit or lucrative purposes and that the expenses alleged and the items connected with the depreciation were not necessary and ordinary expenses of the taxpayer's business and were not deductible. The Tax Court held that the Treasurer's determination was erroneous. That conclusion of the court *a quo* has not been protested. If the only issue raised before the Tax Court would have referred to the validity or incorrectness of said determination, and the court *a quo* would have held that the decision of the Treasurer was erroneous, it could not have ratified the tax erroneously levied, because of the fact in itself that the taxpayer had not introduced evidence on the correct tax due. In that case, our duty would have been to remand the case to the Tax Court for the purpose of introducing evidence on the tax actually due, under a lawful procedure.

However, in this case, the Treasurer did not limit himself, before the Tax Court, to allege, erroneously, that the depreciation claimed did not refer to the business or industry of the taxpayer. In his complaint filed in said court, the petitioner set forth the exact amount which he claimed as deductible expenses in his property, including the depreciation. In his answer, the Treasurer, not only alleged extensively that said items were not ordinary and necessary expenses of the taxpayer's business but he also specifically denied the amount claimed, denying also that the taxpayer had incurred in said "expenses" or in any expense whatsoever. At the hearing before the court *a quo* the following took place:

"CHIEF JUDGE: Very well. What is in issue?
"PETITIONER: May it please the Court . . .
"It concerns some deficiencies which cover four years: forty-two, forty-three, forty-four and forty-seven.

"The main issue in this case, we believe, by its background before the Income Tax Bureau of the Department of Finance and through the pleadings before the Court, refers to some expenses that the taxpayer deducted in his income tax returns for those years for the operation of a property in Espinosa ward, which were rejected every year by the Treasurer, and which mainly account for the deficiencies which are before this Court today.

"There are other smaller items which have nothing to do with that farm.

"As appears from the notice of deficiency—a copy of which is attached to the complaint— and as appears from the decision of the Income Tax Bureau after reconsideration and an administrative hearing, these items were rejected because they were not considered ordinary expenses in the operation of a business. We always understood during the course of these deficiencies that the amounts claimed and the verification thereof were not in issue, but only the contention of the Treasurer that Mr. Brown's farm was not a business which he carried on for profit and that therefore, as a matter of law, the deduction was not permissible any year.

"At the administrative hearing, many books as to the property were introduced in evidence, that is, that he established the deductions by cancelled checks, invoices and other vouchers. That evidence was presented to the officer at the administrative hearing. We have brought it here today. It is rather voluminous and if it is necessary to introduce it, we are going to do so. The Court would have to study it in order to examine it and verify the numbers.

"Now, the only question which I urge this Court to determine is whether, in view of these antecedents, that question is properly before the Court or if the only issue before the Court is whether or not the taxpayer operates the business for profit.

"We are, therefore, ready to introduce evidence on the two particulars, but we do not want to take the time of the Court needlessly, therefore, we would like this to be defined.

"RESPONDENT: May it please the Court . . .

"The issues are established by way of pleadings. The averments of the complaint are in the sense that in the years in issue herein, that is, forty-two, forty-three, forty-four and forty-seven, Mr. Henri Brown was engaged, as a business for

profit, in the operation of a farm of four hundred cuerdas in Espinosa ward of the municipality of Dorado, Puerto Rico, and during each one of those years he incurred in losses for specific sums which are specifically alleged in the complaint.

"In respondent's answer, two questions are specifically alleged: that the operation .of the four hundred cuerdas property of Mr. J. Henri Brown is not a business or industry, that is, that it does not constitute a trade business of the petitioner, and that even so, the expenses have not been duly verified. I believe, then, that if the colleague is in a condition to introduce that evidence  . . .

"PETITIONER: Yes.  I agree with my colleague.  It is all right, it appears from the pleadings.

"RESPONDENT: — . . . inasmuch as he has said that he has that evidence here  . . .

"PETITIONER: We agree.  Yes.  It is that I thought that my colleague had denied that, as it is generally denied, and once the report of the official is brought where it is stated in connection with those items, 'this was verified  . . .'

"RESPONDENT: It is because in the administrative hearing there was no evidence on specific expenses.

"PETITIONER: Well, that was because they had nothing to do with the property.

"RESPONDENT: No.  As my colleague alleges right now, at the hearing that evidence was introduced;  but said items which are specified in the complaint now, were not there in issue nor was there any evidence to that respect.  Therefore the Treasurer could never pass upon that.

"CHIEF JUDGE: Then let us proceed.  Let's have the evidence.

"RESPONDENT: But what we mean to say, Your Honor, is that no matter what happens at the hearing and no matter what the administrative decision of the Treasurer covered, what this Court is going to decide is what is in issue by way of the pleadings."

It is obvious, therefore, that the taxpayer agreed to have the respondent court consider, not only the Treasurer's decision, but also the intrinsic merit of the expense items including that of depreciation.  He introduced evidence as to the amount of depreciation claimed, but that evidence was insufficient.

The question connected with the amount of depreciation being duly raised, in the case at bar, the Tax Court acted correctly in holding that the taxpayer did not introduce sufficient evidence to support its allegation as to depreciation.

■■ In the year 1931, the citrous fruit farm in question belonged to petitioner's mother, who died that year and petitioner acquired the usufruct of the property by virtue of testamentary provisions of his aforesaid ancestor. The basis taken for computing a reasonable deduction for depreciation of property used in the industry or business of a taxpayer is the same used to determine the profit or loss had in case of sale or other disposition of the property. If the property is received by inheritance said basis is the market value at the time of the hereditary acquisition.[1] Mertens, *Op. Cit.*, Vol. 3, §§ 21.63, 21.64, pp. 439 *et seq;*

---

[1]Section 16 (*a*) of our Income Tax Act provides, in part, as follows:

"Section 16 (*a*).—In computing net income there shall be allowed as deductions:

"     .     .     .     .     .     .     .

"     .     .     .     .     .     .     .

"(8) A reasonable allowance for the exhaustion, wear and tear of property used in the trade or business, including a reasonable allowance for obsolescence.  . . ."

Section 7 (*c*) of the same Act provides:

"The basis upon which depletion, exhaustion, wear and tear, and obsolescence are to be allowed in respect of any property shall be the same as is provided in subdivisions (*a*) or (*b*) for the purpose of determining the gain or loss upon the sale or other disposition of such property."

And § 7(*a*) (5) provides:

"The basis for determining the gain or loss from the sale or other disposition of property acquired after February 28, 1913, shall be the cost of such property; except that:

"(5) If the property was acquired by bequest, devise or inheritance, the basis shall be the fair market value of such property at the time of such acquisition. The provisions of this paragraph shall apply (A) to the acquisition of such property interests as the taxpayer has received as the result of a transfer or the creation of a trust in contemplation of or intended to take effect in possession or enjoyment at or after death, or (B) to such property interests as the taxpayer has received as the result of the exercise by a person of a general power of appointment by will, or by deed executed in contemplation of or intended to take effect in possession or enjoyment at or after his death; . . ."

Vol. 4, p. 71, § 23.55; *Hartley* v. *Commissioner*, 295 U. S. 216. The taxpayer herein did not introduce evidence of any kind on the market value of the property in question at the time he acquired it by inheritance. Inasmuch as no evidence was introduced on the basis of depreciation, the deduction of said item does not lie, as to this aspect of the case. *National Weeklies* v. *Com'r of Internal Revenue*, 137 F. 2d 39, 42, 43.

■ Now then, the taxpayer alleges that he planted citrous fruit trees after he acquired the property by inheritance, and that the cost of said planting and harvesting ought to be the basis for the depreciation. The evidence introduced by the taxpayer was to the effect that in the years in which he claimed the depreciation there were about 100 cuerdas planted; that the hurricane of September 1932 destroyed many trees; that after that date the taxpayer planted about one thousand trees; [2] that the average cost of planting, harvesting, and putting into production one cuerda of citrous fruits (grapefruits for example) is about five hundred dollars and that the useful life of said trees is of thirty years, giving rise to a depreciation of three and a third per cent per year.

Even assuming that evidence on the basis of cost estimates, and not on the basis of an actual cost, is sufficient for that purpose, the taxpayer did not introduce evidence on the number of cuerdas that he actually planted and harvested. In connection with the one hundred cuerdas that were planted there, in the year 1942, there was no evidence as to how many cuerdas remained planted or in production immediately after the 1932 hurricane nor as to the cuerdas which petitioner himself planted and harvested. He testified that he had planted about a thousand trees but there was no evidence as to the amount of cuerdas in which those one thousand trees

---

[2] The taxpayer stated the following: "And I have to plant new trees and I employed enough time and money to put the farm in good condition. *I suppose* that *about a thousand trees* were planted." (Italics ours.)

were planted, nor as to the number of trees per cuerda.[3] Therefore, the evidence was not sufficient to establish the cost of the trees, that is, to show the basis of the depreciation.

The judgment appealed from will be affirmed.

Mr. Justice Sifre did not participate herein.

---

[3] Taxpayer's witness Timoteo B. Souther testified, in part, that in his own citrous fruit farm he has six thousand trees planted in less than one hundred cuerdas, which tends to show that one thousand trees are produced in less than one hundred cuerdas. The taxpayer also testified that the fruits and the trees were lost due to other causes.